**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 20, 2026

**BY ECF**
The Honorable John P. Cronan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *United States v. Edson Brown*, 25 Cr. 241 (JPC)**

Dear Judge Cronan:

Edson Brown was a prolific gun trafficker who put more than 100 guns, most of them untraceable, into the New York City area. The full extent of the damage his crimes caused—including the numbers of lives lost and victims injured by guns Brown Trafficked to New York—will likely never be known. But the Court can ensure that Brown is held accountable for his crimes and provide a measure of justice for victims who will never know the name of the person who trafficked the gun that shot them. Accordingly, the Court should impose a sentence of imprisonment within the Guidelines range of 135 to 168 months. Such a sentence would address the gravity of Brown's crimes and send a message to him and to others that gun trafficking is a risky business that is treated with the seriousness it demands.

## I. Offense Conduct

For more than a year, Edson Brown was a pipeline of guns that flowed from North Carolina and South Carolina to New York, bringing 115 handguns into the city between July 2023 and October 2024. And in February 2025, Brown was arrested while trying to traffic even more guns. Brown's trafficking scheme acquired its guns two ways. The first was that Brown worked with straw purchasers in the southern states to buy guns for Brown that Brown then trafficked to New York and sold. The second was that Brown used a stolen identification and impersonated a South Carolina resident who was able to buy guns legally. In addition to the straw purchaser whose identity Brown had stolen in South Carolina, when he was arrested, Brown possessed the North Carolina ID and social security card for a third person, whose ID Brown presumably intended to use to buy and traffic more guns.

After Brown acquired his guns in North Carolina and South Carolina, he brought them back to New York City where he used a rotary tool to remove the serial numbers before selling them to others, including to other members of the Nine Trey set of Bloods, of which the defendant is a member. Brown advertised his guns for sale online and over social media, and he sold them for cash and sometimes used third parties to conduct the sales.

Of the guns that Brown trafficked to New York City, at least nine have been recovered by the NYPD after being possessed or used illegally.[1] One of the guns was used in an armed robbery. Another was used to threaten a victim. All of them were recovered in areas of the city and under circumstances that made their use likely and potentially deadly. Eight of the nine guns that were recovered had their serial numbers defaced and had to have the numbers restored through a chemical process by the NYPD laboratory. It remains unknown how many others of Brown's guns have been recovered but have been unable to have their serial numbers restored. It is also unknown how those guns, and the others that are still in circulation, have been used.

## II. The Sentencing Guidelines

The defendant's Guidelines sentencing range is 135 to 168 months' imprisonment. This range results from an offense level of 32 and criminal history category of II, owing to a prior felony firearms offense that was prosecuted in Bronx County.[2] The defendant's offense level of 32 accounts for various components of the defendant's gun trafficking, including that he trafficked more than 100 guns, removed serial numbers from the guns he trafficked, and knew (or could have reasonably expected) that the black market, defaced guns he sold for cash to others, including to gang members, were going to be used illegally, *see United States v. Fortune*, No. 22-1179-CR, 2023 WL 6439886, at *2 (2d Cir. Oct. 3, 2023). Brown receives only a two-point adjustment for acceptance of responsibility because he did not plead guilty until the final pretrial conference, after the Government had produced prior statements of anticipated trial witnesses.

## III. A Guidelines Sentence is Fair and Just

The Court should sentence the defendant to a Guidelines term of imprisonment of between 135 and 168 months. This sentence is fair and just, and it is the minimum sentence the Court can impose that would meet the requirements of 18 U.S.C. § 3553(a).

Trafficking more than a hundred firearms into New York City is a deadly serious crime that merits a significant, lengthy punishment. In New York and New York City, effective gun control measures have limited the availability of legally acquired firearms to be used in violent crimes. As a result, in a 2016 report, the New York Attorney General's Office found that 86% of firearms recovered in crimes in the city came from outside of the state.[3] This same study described that 76% of trafficked guns come into New York from seven states including—as in this case—North Carolina and South Carolina. In other words, it is the defendant's crime, and that of others who commit the same conduct, that facilitates the other gun crimes in the city. The defendant and others like him make money by fueling deadly and destructive violence. It is no answer for the defendant to say that he is not the person pulling the trigger in these other crimes, because the defendant is the person who makes those other crimes possible.

---

[1] A ninth gun was recovered after the PSR was published.

[2] The defendant has two other firearms convictions for which he receives no points.

[3] New York Attorney General's Office, *Target on Trafficking: New York Gun Crime Analysis* (https://ag.ny.gov/sites/default/files/reports/target-on-trafficking-2016.pdf).

The defendant's trafficking further fueled violence because of how he distributed his guns and who he distributed them to. The defendant took steps to ensure that the guns he trafficked would be untraceable by using tools to remove their serial numbers. The defendant did this to keep the guns from being tied back to him but also to make them untraceable in the hands of his customers. Put simply, making guns untraceable is something no legitimate gun owner or user would do, and the reason the defendant did this was to make his guns more attractive to the criminals he sold them to. Among the criminals to whom the defendant sold guns were fellow members of the Nine Trey set of the Bloods, a violent and reckless gang that "inspired fear in parts of Manhattan and Brooklyn, in particular with wild shootings and robberies generally aimed at rivals, real and perceived." *See United States v. Ellison*, No. 18 Cr. 834 (PAE), Dkt. 582 at 59 (S.D.N.Y. Nov. 25, 2020) (Judge Engelmayer speaking at sentencing of a Nine Trey leader who received a 288-month sentence). The NYPD has recovered only eight percent of the guns the defendant trafficked, and even in that small number, there has been an armed robbery, violent threats, and illegal possession of loaded guns in public. The full scope of the violence the defendant facilitated with his gun trafficking will never be fully known, but it will be vast, and likely deadly. The violence the defendant inflicted on the community will continue long after he is sentenced. This demands serious accountability.

A Guidelines sentence is also needed to deter future crimes. As the Court has recognized before, "[t]he illegal trafficking of firearms must be deterred in our society. . . . Those who might be inclined to illegally sell guns must realize that if they are caught, there will be very significant consequences." *United States v. Arias*, No. 22 Cr. 441 (JPC), Dkt. 33 (S.D.N.Y. Feb. 24, 2023) (sentencing transcript). The defendant too must be deterred from committing more crimes going forward. Data compiled by the United States Sentencing Commission shows that defendants who are convicted of firearms offenses recidivate at rates well above general recidivism rates.[4] For defendants who are released from custody in their forties, nearly two thirds will reoffend. This number falls to just under half for defendants released in their fifties.

Figure 11. Rearrest Rates of Firearms and All Other Offenders by Age at Release




[4] United States Sentencing Commission, Recidivism of Federal Firearms Offenders Released in 2010 (Feb. 9, 2022), at 29, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20220209_Recidivism-Firearms.pdf.

In this same way, a Guidelines sentence is important to protect the community from the defendant. The defendant has three prior gun possession convictions. And though these convictions all happened in 2009 or earlier, in the years since, the defendant has been engaged in sophisticated criminal conduct. He made more than a dozen trips to traffic guns from North Carolina and South Carolina to New York; he stole at least one person's identification to do so; and he was trafficking guns up to the moment he was arrested in the act.

The defendant has argued in mitigation that since his arrest, his "transformation and rehabilitative efforts have been extraordinary." Def. Mem. at 1. It is a credit to the defendant that he completed his GED since being arrested, but that is not the whole story. Notably, the defendant's conduct in the lead up to trial and now sentencing has been inconsistent with taking complete responsibility for his crimes, which undercuts significantly the defendant's argument that "[h]e has learned the lesson that living a productive life crime free is the answer." Def. Mem. at 2. Most tellingly, the defendant chose to plead guilty on the eve of trial, only after receiving the *Jencks* Act materials, including those from Straw Purchaser-1. The defendant's choice to plead was motivated by his realization that he could not succeed at trial, not a genuine acceptance of responsibility. This trend continued into sentencing. After the final PSR was released, the defendant called Straw Purchaser-1 from a contraband cellphone at the MDC and asked her why she allowed the government to "trick" her. It was Straw Purchaser-1's impression that the defendant was trying to get her to change her account, likely in hopes of changing the Guidelines calculation for his conduct.[5] The defendant's actions are not those of someone who has accepted responsibility fully for his crimes and is ready to reenter society. His claimed mitigating factors cannot bear the weight he places on them, and they do not justify a below-Guidelines sentence.

## IV. Conclusion

The defendant was a prolific trafficker of more than a hundred guns, and the Court should sentence him to a term of imprisonment of between 135 and 168 months.

Respectfully submitted,

JAMES M. MCDONALD
*United States Attorney for the*
*Southern District of New York*

by: /s/
Andrew Jones
Joseph Rosenberg
Assistant United States Attorneys

---

[5] Based on the defendant's decision not to address the offense level calculation in the PSR in his submission, the Government understands that the defendant no longer objects to the calculation.